IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CINCINNATI INSURANCE COMPANY,  )
                                )      CIVIL ACTION NO. 3:14-155
                    Plaintiff,  )
                                )      JUDGE KIM R. GIBSON
             v.                 )
                                )
JERRY ELLIS CONSTRUCTION, JERRY )
ELLIS, GARY GADLEY,             )
                                )
                    Defendants. )

MEMORANDUM OPINION AND ORDER

## I.     Introduction

Before the Court in this matter is Plaintiff's motion for summary judgment (ECF No. 26). This matter has been fully briefed (*see* ECF Nos. 27, 28, 29, 30, 31, 32, 35, 38) and is ripe for disposition. For the reasons that follow, Plaintiff's motion for summary judgment will be **DENIED**.

## II.    Jurisdiction and Venue

The Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391.

## III.   Background

This case arises from the construction of a timber frame home by Gary Gadley for his personal use. Defendants Jerry Ellis Construction and Jerry Ellis (collectively, "the Ellis Defendants") held themselves out as competent installers of Thermocore Structural Insulated Panel Systems ("SIPs"). (ECF Nos. 28 ¶ 1; 30 ¶ 1.) In 2011, Gadley purchased

SIPs panels from Thermocore for use in his roof. (ECF Nos. 28 ¶ 2; 30 ¶ 2.) On or about September 29, 2011, Marcia Ellis contacted Gadley on behalf of the Ellis Defendants and proposed that the Ellis Defendants install the SIPs panels. (ECF Nos. 28 ¶ 3; 30 ¶ 3.) Ms. Ellis represented that the Ellis Defendants had been installing Thermocore SIPs panels for several years and sent Gadley documentation detailing their experience, price list, methods, and insurance. (ECF Nos. 28 ¶ 4; 30 ¶ 4.) The Ellis Defendants represented that they would measure the building prior to beginning installation, would compare the measurements with the prints to avoid installation problems, and would ensure that the SIPs panels were properly installed. (ECF Nos. 28 ¶ 5; 30 ¶ 5.)

On or around October 5, 2011, the Ellis Defendants submitted a contract proposal to Gadley, whereby the Ellis Defendants would install the SIPs panels for $7,550.00. (ECF Nos. 28 ¶ 6; 30 ¶ 6.) Gadley accepted the terms of the contract on October 5, 2011. (ECF Nos. 28 ¶ 7; 30 ¶ 7.) On or about October 27, 2011, the Ellis Defendant began to install the SIPs panels on Gadley's newly constructed residence. (ECF Nos. 28 ¶ 12; 30 ¶ 12.) The Ellis Defendants began at one edge of the roof and installed the SIPs panels horizontally across the length of the roof. (ECF Nos. 28 ¶ 13; 30 ¶ 13.) When the Ellis Defendants reached the opposite end of the roof, they returned to the starting point to begin another row of SIPs panels that adjoined the first row but were higher on the vertical rise of the roof. (ECF Nos. 28 ¶ 13; 30 ¶ 13.) The Ellis Defendants installed the SIPs panels out of order from and in complete deviation from the manufacturer's specified installation order that was incorporated into the contact. (ECF Nos. 28 ¶¶ 14, 36, 53; 30 ¶¶ 14, 36, 53.)

After the installation was complete, Gadley paid the Ellis Defendants. (ECF Nos. 28 ¶ 20; 30 ¶ 20.) From his visual inspection, Gadley observed that the SIPs panels did not properly run the full length of the home and left visible gaps on the underside of the eaves of the roof. (ECF Nos. 28 ¶¶ 23, 49-50; 30 ¶¶ 23, 49-50.) The SIPs panels also had open gaps where they were joined together. (ECF Nos. 28 ¶ 35; 30 ¶ 35.) Gadley engaged the work of a general contractor to remedy the visible gaps in the overhang. (ECF Nos. 28 ¶ 26; 30 ¶ 26.) Gadley spent more than $5,000.00 to cosmetically remedy the visible overhang gaps. (ECF Nos. 28 ¶ 27; 30 ¶ 27.)

Plaintiff issued the Ellis Defendants an insurance policy, ENP 003 77 50 ("the Policy"), for the time period of June 2, 2010, through June 2, 2013. (ECF Nos. 28 ¶ 62; 30 ¶ 62.) Subject to a reservation of rights, Plaintiff defended the Ellis Defendants in *Gadley v. Ellis*, No. 3:13-CV-17 ("the underlying action"). (ECF Nos. 28 ¶ 72; 30 ¶ 72.) Plaintiff filed a motion to intervene in the underlying action, which this Court denied in *Gadley v. Ellis*, No. 3:13-CV-17, 2015 U.S. Dist. LEXIS 83284 (W.D. Pa. June 26, 2015). (ECF Nos. 28 ¶ 73; 30 ¶ 73.)

In the trial of the underlying action, the jury returned a verdict in favor of Gadley and against Jerry Ellis Construction. (ECF Nos. 28 ¶ 74; 30 ¶ 74.) Specifically, the jury found that Jerry Ellis Construction did not breach its contract with Gadley to install the SIPs panels. (ECF Nos. 28 ¶ 75; 30 ¶ 75.) The jury determined that Jerry Ellis Construction breached an express warranty provided to Gadley in the installation of the SIPs panels, breached the implied warranty that the installation of the SIPs panels would

be performed in a reasonably workmanlike manner, and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by failing to comply with the terms of the written guarantee or warranty given to Gadley and by making improvements to Gadley's real property of a nature and quality inferior to or below the standard of that agreed to in the contract between the parties. (ECF Nos. 28 ¶¶ 76-77, 82-83; 30 ¶¶ 76-77, 82-83.) The jury also found that Jerry Ellis Construction did not violate the UTPCPL by representing to Gadley that the services provided to him were of a particular standard, quality, or grade when they were of another or by engaging in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. (*See* ECF No. 30 ¶¶ 82-83.) The jury awarded Gadley $108,000 in damages for Jerry Ellis Construction's breach of the express and implied warranties and found that $25,000 of the total represented damages to the SIPs panels. (ECF Nos. 28 ¶¶ 78-79; 30 ¶¶ 78-79.) The jury determined that Gadley's damages should be reduced by thirty percent for his failure to mitigate the damages incurred. (ECF Nos. 28 ¶¶ 80-81; 30 ¶¶ 80-81.)

## IV. Applicable Law

A grant of summary judgment is appropriate when the moving party establishes that "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact is one that could affect the outcome of litigation. *Mahoney v. McDonnell*, 616 Fed. Appx. 500, 504 (3d Cir. 2015) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Id.* (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)). Further, the benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 Fed. Appx. 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Id.* (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Connection Training Servs. v. City of Philadelphia*, 358 Fed. Appx. 315, 318 (3d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 324).

## V.    Discussion

### A.    Choice of Law

The parties contest which law should apply to the Policy at issue. Specifically, Plaintiff asserts that Pennsylvania law and Indiana laws are potentially applicable to the Policy. (ECF No. 27 at 4.) Plaintiff does not take a position as to which state law should apply, contending that there are no conflicts between the laws of the two states. (*Id.*) Gadley argues that Indiana law applies. (ECF No. 31 at 9-14.)

In federal diversity cases, a federal court must apply the conflict-of-law rules of the forum state in which it sits, in this case, Pennsylvania. *See Garcia v. Plaza Oldsmobile LTD.*, 421 F.3d 216, 219 (3d Cir. 2005); *see also GNC Franchising, Inc. v. O'Brien*, 443 F. Supp. 2d 737, 743 (W.D. Pa. 2006). As the Third Circuit has noted, Pennsylvania courts generally honor the intent of the contracting parties and enforce choice-of-law provisions in contracts executed by them if that state bears a reasonable relationship to the contract. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994); *see also Bishop v. GNC Franchising, LLC*, 403 F. Supp. 2d 411, 415 (W.D. Pa. 2006); *O'Brien*, 443 F. Supp. 2d at 743 (noting that in accordance with Pennsylvania's adoption of § 187 of the Restatement (Second) of Conflict of Laws, contract provisions should be upheld as long as the transaction bears a "reasonable relationship to the state whose law is governing") (internal quotations omitted). Further, "Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests." *Kruzits*, 40 F.3d at 56.

A review of the Policy at issue reveals that the Policy contains Indiana changes regarding cancellation and nonrenewal, an Indiana endorsement that modifies the Policy, an Indiana change regarding a pollution exclusion, and an Indiana general change endorsement. (ECF No. 28-2 at 10, 15, 39, 66.) However, the Policy does not include any choice-of-law provisions. (*See generally* ECF No. 28-2.)

In applying Pennsylvania's conflict-of-law rules, the Court must first determine whether there is an "actual" conflict between the laws of Pennsylvania and Indiana. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007). While Plaintiff asserts that there are no "actual or real differences" between Pennsylvania law and Indiana law, it also states that there are "semantic differences" between them. (ECF No. 27 at 4.) Specifically, Plaintiff states that Pennsylvania law has held that faulty workmanship is not an "occurrence" under a commercial general liability policy, while Indiana law recognizes that commercial general liability coverage does not provide coverage for poor workmanship but is subject to exclusions. (*Id.* at 5-6.)

Pursuant to Pennsylvania law, "the definition of 'accident' required to establish an 'occurrence' under [commercial general liability] policies cannot be satisfied by claims based upon faulty workmanship." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006); *see also Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) (holding that "for a claim to trigger coverage, there must be a causal nexus between the property damage and an 'occurrence,' *i.e.*, a fortuitous event" and that "[f]aulty workmanship, even when cast as a negligence claim, does not

constitute such an event"). In contrast, the Supreme Court of Indiana has held that a standard commercial general liability policy covers property damage caused by faulty workmanship. *See Sheehan Constr. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 167-69 & n.4-5 (Ind. 2010) (declining to adopt Pennsylvania's approach and holding that "we align ourselves with those jurisdictions adopting the view that improper or faulty workmanship does constitute an accident so long as the resulting damage is an event that occurs without expectation or foresight"); *see also Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 864 F. Supp. 2d 744, 750 (S.D. Ind. 2012) (explaining that "[w]hile the Court in *Sheehan* did not specifically state that damage caused by faulty workmanship was 'property damage,'" it concluded that "faulty workmanship qualifies as an accident, and thus an 'occurrence,' if it happened without intention or design").

The Court finds that there is a "true conflict between the relevant laws" of Pennsylvania and Indiana "because the interests of both [states] would be adversely affected to some degree by application of the other state's law." *Specialty Surfaces Int'l*, 609 F.3d at 232. Pennsylvania has an interest in the litigation because the property damage occurred in Pennsylvania, and Indiana has an interest in having its law apply to an insurance policy that was issued in Indiana by a company licensed in Indiana. *See id.*; *see also Hammersmith*, 480 F.3d at 232 (finding an actual conflict between New York and Pennsylvania law where the insurance policy was issued in New York to a New York resident and where the accident victim was injured in Pennsylvania).

Having determined that a true conflict exists, the Court must "conduct an analysis of each state's contacts with the contract of insurance and its interests in having its law applied to the question at hand." *Specialty Surfaces Int'l*, 609 F.3d at 233. Specifically, the Court must "begin the analysis by assessing each state's contacts under the Second Restatement of Conflicts of Laws, bearing in mind that '[w]e are concerned with the contract of insurance' and not the underlying tort." *Hammersmith*, 480 F.3d at 232-33 (quoting *McCabe v. Prudential Prop. & Cas. Ins. Co.*, 514 A.2d 582, 586 (Pa. Super. Ct. 1986)). Section 193 of the Second Restatement, which governs casualty insurance contracts, provides:

> [T]he "validity [of the contract] . . . and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless . . . some other state has a more significant relationship . . . to the transaction and the parties[.]"

*Id.* at 233 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193). Comment b states that courts "should generally give the location of the insured risk 'greater weight than any other single contact.'" *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. b).

The Policy between Plaintiff and the Ellis Defendants provides the Ellis Defendants with coverage throughout several states, including Pennsylvania and Indiana, in which the Ellis Defendants conduct business. *See id.* (finding that § 193 was inapplicable because the insurance contract provided coverage for subsidiaries in more than twenty states and throughout the world) (citing *Manor Care v. Cont'l Ins. Co.*, No. 01-

CV-2524, 2003 U.S. Dist. LEXIS 20202, at *23-24 (E.D. Pa. Oct. 27, 2003) (holding that § 193 did not apply where the insured facilities were located in thirty states), and *Gould, Inc. v. Cont'l Ins. Co.*, 822 F. Supp. 1172, 1175-76 (E.D. Pa. 1993) (finding that § 193 was inapplicable because the "comprehensive general liability policy . . . was intended to insure the risks of business operations scattered throughout a number of states")). *See also Specialty Surfaces Int'l*, 609 F.3d at 233 (concluding that § 193 did not apply because "the policy was not limited to a specific state or project," the insured "performed work nationally," and "the insurance company anticipated that it would cover risks outside of Pennsylvania").

In matters where § 193 is inapplicable, courts examine the following factors included in § 188(2) of the Restatement (Second) of Conflict of Laws to determine which state has greater contacts with the contract at issue: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Hammersmith*, 480 F.3d at 233 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)).

In this case, Plaintiff is an Ohio corporation, and the Ellis Defendants are based in Indiana. (ECF No. 1 ¶¶ 1-3.) Gadley is a Pennsylvania resident. (*Id.* ¶ 4.) Regarding the first factor, it is well settled that "[a]n insurance contract is made in the state where it is delivered." *Hammersmith*, 480 F.3d at 233. Here, the Policy was made and delivered within Indiana. (ECF No. 1 ¶ 7.) Moreover, because the insureds are incorporated and

10

located in Indiana, it is fair to presume the policy was delivered in Indiana. *See*

*Hammersmith*, 480 F.3d at 234 (explaining that it was fair to presume that the policy was

delivered in New York, where the insured was headquartered). The second factor, the

place of negotiation, also favors the application of Indiana law. The negotiations of the

Policy likely occurred between Ohio, Plaintiff's principal place of business, and Indiana,

where the Ellis Defendants are based. There is no evidence that any part of the

negotiations took place in Pennsylvania. *See id.* (finding that the place of negotiation was

New York because there was no evidence that any negotiations occurred in

Pennsylvania).

Regarding the third factor, the place of performance is the state in which notice

should have been provided or where the premiums were received. *Id.* In this case, the

Policy provides that insureds should contact Plaintiff's address in Ohio, and there is no

evidence regarding where the premiums were received. (*See* ECF No. 28-2 at 9.) Thus,

the third factor is neutral because it does not weigh in favor of the application of Indiana

or Pennsylvania law. The fourth factor, the location of the subject matter of the contract,

"refers to the location of the insured risk." *Hammersmith*, 480 F.3d at 234. As previously

discussed, the Policy provides the Ellis Defendants with coverage throughout several

states, including Pennsylvania and Indiana, in which the Ellis Defendants conduct

business. The fourth factor is therefore neutral because it does not weigh in favor of the

application of Indiana or Pennsylvania law. *See Specialty Surfaces Int'l*, 609 F.3d at 234

(finding that "there is no identifiable location for the risk insured by the contract" because the policy provided nationwide coverage).

Finally, the fifth factor refers to the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Hammersmith*, 480 F.3d at 233. As discussed above, Plaintiff is an Ohio corporation, and the Ellis Defendants are based in Indiana. (ECF No. 1 ¶¶ 1-3.) Because Gadley was not a party to the Policy, the Court will not take into account his residence. *See Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, No. 12-CV-873, 2012 U.S. Dist. LEXIS 35760, at *10 (E.D. Pa. Mar. 16, 2012) ("We do not take into account Monmouth's location as it was not a party to the insurance policies."). Accordingly, the fifth favor weighs in favor of the application of Indiana law.

Weighing the above factors on a "qualitative scale," it is clear that Indiana "has a more significant relationship to the insurance contract than Pennsylvania." *Hammersmith*, 480 F.3d at 235. Indeed, "[t]he only connection Pennsylvania has to this dispute is that [Gadley] resides, and [the claim] occurred, in Pennsylvania." *Id.* Similarly, Plaintiff has alleged that "[t]he insurance policy at issue is governed by and is to be interpreted under Indiana law." (ECF No. 1 ¶ 7.) Thus, because "'we are [primarily] concerned with [the] contract of insurance, and, as to the insurance policy, [Indiana] has the most significant contacts.'" *Hammersmith*, 480 F.3d at 235 (quoting *McCabe*, 514 A.2d at 586). *See also Specialty Surfaces Int'l*, 609 F.3d at 235 (concluding that Pennsylvania law applied because "we believe that the place of contracting, the place of negotiation, and the parties' principal places of business are the most important contacts when determining which

12

state's law should be applied"); *Zurich Am. Ins. Co.*, 2012 U.S. Dist. LEXIS 35760, at *10-11 (declining to apply New Jersey law because "[t]he place of contracting and negotiation was Pennsylvania, and the principal places of business of the parties to the insurance contracts are Pennsylvania and New York").

### B.     Application of Indiana Law to the Policy

#### 1.     The Policy's Repair or Replace Provisions

Plaintiff requests a declaration that it does not owe a duty to indemnify the Ellis Defendants against the verdict rendered in the trial of the underlying action because the Policy does not cover the cost of repairing or replacing the Ellis Defendants' work. (ECF No. 27 at 4.) Plaintiff asserts that the Policy only provides coverage for "property damage" caused by an "occurrence," which is defined as an accident. (*Id.* at 5.) Plaintiff notes that the Supreme Court of Indiana has held that the business-risk doctrine, which provides that the cost to repair and replace the damages caused by faulty workmanship is a business risk not covered under a commercial general liability policy, is applied by interpreting a policy's exclusions rather than its definition of "occurrence." (*Id.* at 7 (citing *Sheehan Constr. Co.*, 935 N.E.2d at 169).) Although the issue of whether a "Damage to Your Work" exclusion precludes coverage for the natural and ordinary consequences of faulty workmanship has not arisen in Indiana, Plaintiff contends that "it is reasonable to conclude that subsequent Indiana decisions will find that the . . . exclusion precludes coverage." (*Id.* at 7.) Plaintiff therefore asserts that the Policy does not cover the jury's verdict in the underlying action providing damages to Gadley for the costs to

"cosmetically remedy the Ellis Defendants' work and for a cold roof to be constructed on top of the Ellis Defendants' work."  (*Id.* at 8 (internal quotations omitted).)

In response, Gadley argues that the "Damage to Your Work" exclusion applies only to the SIPs panels, not to other property damage caused by the faulty workmanship of the Ellis Defendants.  (ECF No. 31 at 15.)  Gadley further asserts that Plaintiff has misstated the facts of the underlying action because he did not recover any damages for the installation of a cold roof.  (*Id.* at 18-20.)  Because the jury found that $25,000 of its $108,000 verdict represented damages related to the SIPs panels, Gadley contends that $83,000 represented the damage to other property, which is not excluded by the Policy. (*Id.* at 17-18.)[1]

In reply, Plaintiff states that Gadley has admitted that it has no obligation to cover the $25,000 in damages to the SIPs panels.  (ECF No. 35 at 1.)  Plaintiff asserts that it is not required to indemnify the Ellis Defendants for the remainder of the verdict because the SIPs panels "were not the work or product of the Ellis Defendants."  (*Id.*)  Specifically, Plaintiff states that the Policy does not provide coverage for the $83,000 portion of the verdict, which represented the cost to repair or replace the Ellis Defendants' work.  (*Id.* at 2.)  In his sur-reply, Gadley discusses the evidence presented at trial and reiterates that $83,000 represented the damage to other property, which is not excluded by the Policy. (ECF No. 38 at 5-8.)

_____

[1] An appearance has not been entered on behalf of the Ellis Defendants, and they have not filed any pleadings in this matter.  The Clerk of Court entered a default against the Ellis Defendants on January 5, 2015, (ECF No. 11), and the Court denied Plaintiff's motion for default judgment against the Ellis Defendants, without prejudice, on August 14, 2015, (ECF No. 25).

The Policy provides, in relevant part:

>    1.    Insuring Agreement
>    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(ECF No. 28-2 at 17.)  The Policy defines "occurrence" and "property damage" as follows:

>    16.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>                *     *     *
>    20.    "Property damage" means:
>    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

(*Id.* at 35-36.)

The Policy includes "Damage to Property" and "Damage to Your Work" exclusions, which provide:

>    2.    Exclusions
>    This insurance does not apply to:
>                *     *     *
>    j.    Damage to Property
>    "Property damage" to:
>                *     *     *

15

(5) That particular part of real property on which your or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*     \*     \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

\*     \*     \*

l.     Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(*Id.* at 18, 21-22.)  The Policy defines "your work" as:  "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."  (*Id.* at 36.)  The Policy defines "products-completed operations hazard" as follows:

19.     "Products-completed operations hazard":

a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed; or

16

> (b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or
>
> (c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
> b.     Does not include "bodily injury" or "property damage" arising out of:
>
> (1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by "loading or unloading" of that vehicle by any insured;
>
> (2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or
>
> (3)     Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

(*Id.* at 35-36.)

Initially, the Court notes that following a trial in the underlying action, the jury found that Jerry Ellis Construction breached an express warranty provided to Gadley in the installation of the SIPs panels, breached the implied warranty that the installation of the SIPs panels would be performed in a reasonably workmanlike manner, and violated the UTPCPL by failing to comply with the terms of the written guarantee or warranty given to Gadley and by making improvements to Gadley's real property of a nature and quality inferior to or below the standard of that agreed to in the contract between the

parties. *Gadley v. Ellis*, No. 3:13-CV-17, 2016 U.S. Dist. LEXIS 35252, at *4 (W.D. Pa. Mar. 18, 2016). The jury awarded Gadley $108,000 in damages for Jerry Ellis Construction's breach of the express and implied warranties and found that $25,000 of the total represented damages to the SIPs panels. *Id.* The jury determined that Gadley's damages should be reduced by thirty percent for his failure to mitigate the damages incurred. *Id.*

The verdict sheet in the underlying action required the jury to determine the total represented damages to the SIPs panels because the Court previously concluded that although the economic loss doctrine precluded Gadley's damages claims as to the SIPs panels as damage to the product itself, Gadley was permitted to present evidence of damages as to "other property," which "include[d] both contents of the home and other parts of the home's structure." *Gadley v. Ellis*, No. 3:13-CV-17, 2015 U.S. Dist. LEXIS 63914, at *14-17 (W.D. Pa. May 15, 2015). Following the trial in the underlying action, the Court denied Jerry Ellis Construction's motion for judgment as a matter of law and confirmed that Gadley was precluded from receiving an award for damage to the SIPs panels. *Gadley v. Ellis*, No. 3:13-CV-17, 2016 U.S. Dist. LEXIS 35252, at *13 (W.D. Pa. Mar. 18, 2016). In addressing Gadley's motion for treble damages, the Court reduced the damages by the portion of damages to the SIPs panels that were barred by the economic loss doctrine. *Id.* at *19-20. The Court therefore need not address the parties' arguments regarding Plaintiff's obligation to cover the damages to the SIPs panels.

Moreover, the Policy's "Damage to Your Work" provision excludes coverage to damage to "[m]aterials, parts or equipment furnished in connection with such work or

operations." (ECF No. 28-2 at 22, 36.)  Because the SIPs panels were materials furnished in

connection with the work performed, Plaintiff is not obligated to cover damages to them.

*See Sheehan Constr. Co.*, 935 N.E.2d at 166-67 (explaining that it had analyzed a similar

exclusion and concluded that "[t]hese provisions clearly exclude insurance coverage for

damages to the insured's product or work when such damages are confined to the

product or work and caused by the product or work, or any part thereof.  It is only

damage to other property arising out of the insured's product or work which would be

covered") (internal quotations and alterations omitted); *Selective Ins. Co. v. Cagnoni Dev.,*

*LLC*, No. 1:06-CV-760, 2008 U.S. Dist. LEXIS 2162, at *31 (S.D. Ind. Jan. 10, 2008) ("While

damage to the roof itself based on faulty workmanship does not constitute 'property

damage' and was not caused by an 'occurrence,' Indiana courts have made it clear that

[commercial general liability] policies cover unexpected damage to other property").[2]

Regarding Plaintiff's obligation to indemnify the Ellis Defendants for damage to

other property, the Policy "[is] subject to the same rules of construction as are other

contracts."  *Sheehan Constr. Co.*, 935 N.E.2d at 169.  "When the language of an insurance

contract is clear and unambiguous, we will assign to the language its plain and ordinary

meaning."  *Id.*  "An insurance policy that is unambiguous must be enforced according to

its terms, even those terms that limit an insurer's liability."  *Id.*

---

[2] Because the Court has concluded that Gadley is precluded from recovering damages to the SIPs
panels, it need not address Plaintiff's argument that the Policy's "work in progress" exclusions
preclude coverage for damage to the SIPs panels.  (*See* ECF No. 27 at 8-10.)  The Court further notes
that Gadley has conceded that "the Policy provides that [Plaintiff] must indemnify [the Ellis
Defendants] for damage [their] installation caused to other property (i.e. other than the SIPs panels
themselves)."  (ECF No. 31 at 21.)

As discussed above, the Policy provides coverage for "property damage" caused by an "occurrence." (ECF No. 28-2 at 17, 35-36.) The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 35.) Although the term "accident" is not defined by the Policy, the Supreme Court of Indiana has held that an "accident" means "'an unexpected happening without an intention or design.'" *Sheehan Constr. Co.*, 935 N.E.2d at 170 (quoting *Tri-Etch, Inc., v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1002 (Ind. 2009)). It further explained that "[i]mplicit in the meaning of 'accident' is the lack of intentionality." *Id.* The Supreme Court of Indiana concluded that the facts of the case must be assessed to determine whether faulty workmanship is an accident within the meaning of a standard commercial general liability policy. *Id.* The court held that faulty workmanship that is intentional is not an "accident" or an "occurrence," while faulty workmanship that is "unexpected" and "without intention or design" is an "accident." *Id.*

In the underlying action, Gadley presented evidence that the SIPs panels caused water damage to other property, including the timberframe, walls, ceilings, floors, and contents of his home. *Gadley*, 2016 U.S. Dist. LEXIS 35252, at *12. Following trial, the jury concluded that Jerry Ellis Construction did not represent that its services were of a particular standard, quality, or grade when they were of another and that it did not engage in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. *See id.* at *17. Because the jury determined that Jerry Ellis Construction did not engage in intentional or reckless conduct, the Court declined to grant

Gadley's request for treble damages. *Id.* at *17-18. Instead, the Court doubled the damages that the jury awarded to Gadley. *Id.* at *18. In applying the jury's verdict in the underlying action to the instant matter, the Court cannot conclude that the Ellis Defendants' faulty workmanship was intentional. Rather, the faulty workmanship was "unexpected" and "without intention or design." *Sheehan Constr. Co.*, 935 N.E.2d at 170. The Ellis Defendants' faulty workmanship therefore constitutes an "accident" that is covered by the Policy.

The Court's conclusion is in accordance with well-settled law applying the Supreme Court of Indiana's decision in *Sheehan Construction Company, Inc. See, e.g., Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 864 F. Supp. 2d 744, 755, 760 (S.D. Ind. 2012) (finding that a "Damage to Your Product" exclusion was inapplicable to faulty workmanship that resulted in water intrusion and damaged various components of the purchasers' home and holding that the claims at issue were "property damage" resulting from an "occurrence" that were covered by the policy); *see also Greystone Constr. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1287, 1289 (10th Cir. Colo. 2011) (discussing *Sheehan* and concluding that the policy's "your work" exclusion did not apply where soil expansion caused the home's foundation to shift, resulting in extensive damage to the home, because "damage to *other* property caused by the faulty workmanship . . . *is* the result of an accident") (emphasis in original).

### 2. The Application of the UTPCPL to the Policy

Plaintiff requests a declaration that it does not owe a duty to indemnify the Ellis Defendants against the verdict rendered in the trial of the underlying action for the violation of the UTPCPL. (ECF No. 27 at 10-11.) Specifically, Plaintiff asserts that because "[it] has demonstrated that the 'property damage' which the jury found that Gadley sustained as a result of the Ellis Defendants' breach of express and implied warranties is not covered under the Policy . . . any liability flowing from those damages is not covered under the Policy." (Id. at 10.) In the alternative, Plaintiff argues that commercial general liability policies do not provide coverage for violations of the UTPCPL because the UTPCPL "generally concerns deceptive and/or intentional misrepresentations." (Id. at 11.) Plaintiff further contends that Indiana law does not provide coverage for violations of Indiana's Deceptive Consumer Sales Act ("DCSA") under commercial general liability policies. (Id.)

In response, Gadley asserts that the Policy does not include any exclusions for UTPCPL violations. (ECF No. 31 at 21.) Gadley further argues that his UTPCPL claim in the underlying action does not constitute an "occurrence" under the Policy's terms. (Id. at 21-22.) Because his damages did not arise from intentional or deceptive conduct, Gadley contends that his UTPCPL claim is covered by the Policy. (Id. at 22-25.)

Initially, the Court rejects Plaintiff's argument, which includes no legal support, that the Court must apply Indiana's DCSA to the UTPCPL claim that Gadley asserted in the underlying action. As discussed above, Gadley is a Pennsylvania resident, and his

claims in the underlying action arose in Pennsylvania. The jury found that Defendant Jerry Ellis Construction violated the UTPCPL by failing to comply with the terms of the written guarantee or warranty given to Gadley and by making improvements to Gadley's real property of a nature and quality inferior to or below the standard of that agreed to in the contract between the parties. *Gadley*, 2016 U.S. Dist. LEXIS 35252, at *4. While the Court has concluded that the terms of the Policy must be interpreted under Indiana law, the Court cannot now apply Indiana's DCSA to Gadley's UTPCPL claim in the underlying action. *See, e.g.*, *Prusky v. Allstate Life Ins. Co.*, No. 09-CV-5156, 2010 U.S. Dist. LEXIS 105864, at *8-9 n.4, 15-16 (E.D. Pa. Sept. 30, 2010) (applying Delaware law to the plaintiffs' breach of contract claim and applying Pennsylvania law to the plaintiffs' UTPCPL claim); *Gottlieb v. Tropicana Hotel & Casino*, 109 F. Supp. 2d 324, 330-32 (E.D. Pa. 2000) (applying New Jersey law to the plaintiffs' breach of contract claim and applying Pennsylvania law to the plaintiffs' UTPCPL claim).

To determine whether the damages awarded to Gadley for Defendant Jerry Ellis Construction's violation of the UTPCPL, the Court must apply the terms of the Policy. The Policy provides no exclusions for double or treble damages. Rather, the Policy provides that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (ECF No. 28-2 at 17.) In its provisions detailing limits of insurance, the Policy provides that "[t]he amount we will pay for damages is limited as described in SECTION

III – LIMITS OF INSURANCE."  (*Id.*)  Section III includes a limit of $1,000,000 for each occurrence.  (*Id.* at 16.)

Plaintiff does not cite any provisions of the Policy to support its argument that Gadley's UTPCPL damages are excluded.  Rather, Plaintiff only argues that the Policy does not provide coverage for Gadley's UTPCPL damages because the "property damage" that Gadley sustained is not covered by the Policy.  (ECF No. 27 at 10-11.)  As discussed above, the Ellis Defendants' faulty workmanship constitutes an "accident" that is covered by the Policy.  *See supra* Part V.B.  Accordingly, because the damages awarded to Gadley are not excluded by the Policy and are below the Policy's limits, Plaintiff must indemnify the Ellis Defendants.

## VI.     Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment will be denied.  Plaintiff must indemnify the Ellis Defendants for Gadley's total recovery of $174,553.04, which this Court has previously calculated by attributing the portion of damages to the SIPs panels that could not be recovered under the UTPCPL, incorporating Gadley's failure to mitigate his damages, doubling the calculation, and including attorneys' fees and costs.  *See Gadley*, 2016 U.S. Dist. LEXIS 35252, at *19-20, 22-26.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, ) | |
| ) | CIVIL ACTION NO. 3:14-155 |
| Plaintiff, ) | |
| ) | JUDGE KIM R. GIBSON |
| v. ) | |
| ) | |
| JERRY ELLIS CONSTRUCTION, JERRY ) | |
| ELLIS, GARY GADLEY, ) | |
| ) | |
| Defendants. ) | |

## ORDER

**AND NOW**, this 9th day of June, 2016, upon consideration of Plaintiff's motion for summary judgment, and the parties' responses and replies thereto, and for the reasons set forth in the attached memorandum opinion, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (ECF No. 26) is **DENIED**. Plaintiff shall indemnify Defendants Jerry Ellis Construction and Jerry Ellis for $174,553.04 in damages that were awarded in the underlying action.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants Jerry Ellis Construction, Jerry Ellis, and Gary Gadley, and against Plaintiff Cincinnati Insurance Company, and shall mark this case closed.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**